**Porter S. RICE, Plaintiff-Appellant,**

v.

**Clifford STODDARD, Walter T. Levett, Floyd Porter, Trustee of Bee Branch Township, Elmer Clark, Member of Bee Branch Township Board of Directors, Henry Fisher, Member of Bee Branch Township Board of Directors, E. T. Guilford, Presiding Judge of the County Court of Chariton County, C. F. Elmore, Judge of the Eastern District of the County Court of Chariton County, H. G. Manson, Judge of the Western District of the County Court of Chariton County, Dela Mae Levett and Drainage District No. 20, Chariton County, Missouri, Defendants-Respondents.**

No. 22624.

Kansas City Court of Appeals.

Missouri.

April 7, 1958.

James J. Wheeler, Keytesville, for appellant.

Gilbert Lamb, Salisbury, for respondents, Clifford Stoddard, Walter T. Levett and Dela Mae Levett.

Geo. S. Thompson, Salisbury, for respondents, Bee Branch Township, Chariton County Court and Drainage District No. 20, Chariton County, Missouri.

MAUGHMER, Commissioner.

This is an action to recover damages for alleged unlawful forcing of water onto plaintiff's farm lands and for restraining orders terminating continued maintenance of a levee and a steel tubing which, plaintiff says, were the direct causes thereof. The case was tried to the Court with general findings for defendants. A judgment was entered dismissing plaintiff's petition, and plaintiff has appealed.

The lands involved in this controversy lie one mile west of the present channel of the Chariton river as it has existed since formation of a drainage district in 1944. Before that the river flowed within one-half mile of these farms. These areas are wet, bottom land, very flat, and were all subject to frequent overflow from the river before the drainage district improvements were made.

We are here primarily concerned with two farms, both lying in Section 17, Township 56, Range 16, Bee Branch Township, Chariton County, Missouri. Plaintiff owns the northeast quarter. Defendant Clifford Stoddard, until February 24, 1956, and defendants Walter Levett and Dela Mae Levett thereafter, owned the north half of the south half. Therefore, the east half mile of defendants' north line abutted plaintiff's south line. In 1944, Drainage District No. 20 of Chariton County was organized and its plan of reclamation put into existence. The main drainage ditch (No. 7) ran south and along plaintiff's and defendants' east line on its course to the Chariton river. A lateral ditch sometimes referred to as

No. 17, and sometimes as No. 1, came from the north, extended south across the west part of plaintiff's farm and to the joint property line of these parties. Along this joint property line—the center of Section 17—there is now and since before formation of the drainage district there has existed, a public road. In 1944, under the drainage district plan of reclamation dirt from Lateral No. 17 was placed on the road, thereby raising its level three to five feet and in effect making it into a sort of levee. What amounted to a large lateral ran east and along the north side of this road-levee to the main Ditch No. 7. This runway took water from Lateral No. 17 and other surface accumulations and carried it to the main ditch. A smaller outlet or road ditch ran along the south side of this road-levee to the same main ditch. In 1950, defendant Stoddard built a levee some two feet in height, running from the west part of his farm in an east by north direction to within a few feet of the road-levee, and at a point near the center of Section 17. In 1954, he increased the height of this levee by two or three feet. At about this same time in 1954, the defendant County Court, had the road-levee cut at this point and installed therein a steel tubing five feet in diameter. These facts as just set forth were not disputed and were well established.

Plaintiff asserts that defendants' private levee accumulates and unnaturally forces water from defendants' farm into, through and over the road and onto his farm, thereby damaging the road and plaintiff's farm; that the action of defendant Board and County Court in cutting the road-levee, allowed such accumulated water gathered by defendants' private levee to pour onto plaintiff's land, thereby filling the lateral and damaging the road; that this was an unlawful expenditure of public funds for the private benefit of defendant landowners, rather than for the public welfare, and that the result is a destruction of the drainage district plan of reclamation.

With respect to the important factual issues, the testimony was similar to that

often heard in accretion and drainage cases. The witnesses testified from memory as to remote events. Many were interested or were stirred by various human emotions. The evidence is hardly reconcilable. Twenty-three witnesses testified and one went back 50 years. It is not, we think, necessary to review this testimony witness by witness. Much of it was vague as to time and place and effect and on each side was quite cumulative. Broadly speaking, there were two general ideas advanced. Plaintiff and his witnesses said that the drainage was south across and beyond his farm; that defendants' private levee forced the water over the road and that installation of the tubing filled up the laterals and flooded plaintiff's lands. The landowner defendants and their witnesses said the natural drainage was south onto defendants' land, then east and north to the road and then east toward the river. The county court records show that on July 3, 1954, the court ordered the "County engineer" to stake out the tubing across said road. The evidence was that this steel tubing five feet in diameter was installed. On May 21, 1956, a County Court order was entered "that said tubing be removed". The evidence was that it has not been removed. It appears that these orders were made with the approval of and probably at the behest of the Bee Branch Board.

· All of the land, ditches, levees and watercourses involved in this litigation have been within and were a part of the drainage district since it was formed in 1944. The roadway ditch into which defendants allegedly, with their levee, funneled water, was already a drainage district watercourse. Lateral No. 17, coming from the north across plaintiff's farm, emptied into and against this road-levee on its north side. The district plan of reclamation, as put in effect, was to send this water eastward along the north side of the road-levee to main Ditch No. 7 and down that ditch to the Chariton river. In order to construct this watercourse along the north side of the road-levee, dirt from Lateral No. 17 was piled onto the roadway, raising its level a few feet. This water-bed lying along the north side of the road-levee was opened and deepened.

Every drainage district is authorized to and it is common knowledge that it does, levy and collect an annual maintenance tax. The district management board has full authority to "clean out" ditches or district watercourses that have filled with silt or debris. Section 243.220, V.A.M.S. Such a use of maintenance funds is one of the most usual and recurrent. Section 243.-240, Par. 1, provides: "It shall be the duty of the several county courts of this state to maintain the efficiency of the drainage districts now or hereafter organized and existing under and by virtue of the provisions of this chapter and such courts are vested with the continuous management and control of said districts with the duty and power of maintaining, preserving, restoring, repairing, strengthening and replacing the drains, ditches and levees thereof". If Lateral 17 or the ditch became silted or filled up, the Board had full authority and the duty to maintain same by cleaning them out.

Chapter 243, V.A.M.S. is the statutory chapter dealing with drainage districts organized in the County Court. Section 243.-250 contains this provision: "Any person, persons or corporation shall be permitted to construct lateral ditches or drains for the purpose of draining water into any of the ditches, drains, or watercourses constructed by a district organized under the provisions of this chapter, provided that such lateral ditch or drain shall enter such ditches, drains or watercourses through boxes or tiling * * *". In Section 243.-010 "Definitions", we find that the word "ditch" as used in this chapter shall be held to include "a drain, watercourse, bank protection, current control or *levee* or any drain, watercourse, bank protection, current control or levee hereafter constructed". It seems, therefore, that persons owning land in the district may connect to district

drains if the entrance is "through boxes or tiling". Reference here should be made to Section 243.530, which declares: "This chapter is hereby declared to be remedial in character and purposes, and shall be liberally construed by the courts in carrying out this legislative intent and purpose".

■ Now as to plaintiff's specific assignments of error. He says the court erred in dismissing plaintiff's petition as to the defendants County Court, Township Board and Drainage District Board for the reason that the installation of the tubing across the road was an unlawful change in the adopted plan of reclamation and that its installation in the manner and for the purpose as described in evidence, was the expenditure of public funds for a private, rather than for a public, purpose. We are unable to say that allowing this water to enter a district watercourse, already receiving water from Lateral No. 17, constituted a departure from the plan of reclamation. Certainly, we cannot hold the trial court guilty of error in failing to so rule.

Missouri has adopted the common law or common enemy rule with respect to surface waters. In 93 C.J.S. Waters § 114, p. 806, that rule is stated this way: " * * * under this rule the lower proprietor may take any measures necessary for the protection or improvement of his property, although the result is to throw the water back on the land of an adjoining proprietor, provided it is not done in a reckless manner, or in such a way as to create a nuisance and destroy his property. This rule, however, does not extend to the case where a natural or prescriptive watercourse is obstructed or interfered with to the damage of another. So, too, a landowner may not dam up surface water and impound it in a reservoir and thereby force it back on another's land".

In White v. Wabash Railroad Co., 240 Mo.App. 344, 207 S.W.2d 505, this court reannounced, restated and reaffirmed this rule in an opinion which analyzed many cases and quite fully declared the Missouri

rule. In that case defendant railroad company gathered surface waters into its right-of-way ditches, which it was required by law to construct, and discharged such waters into a small branch or natural watercourse on plaintiff's land. The court reversed outright a judgment for plaintiff, holding that defendant was lawfully entitled to so act. On page 510 of 207 S.W.2d of the opinion the court said: "If the defendant had collected the surface water in its ditches and discharged it upon plaintiffs' land at a point where there were no 'ditches, drains or watercourses', then an entirely different question would be presented".

In our case defendant, on the basis of plaintiff's own testimony, accumulated surface waters and discharged them into a drainage district watercourse. We believe the same reasoning and rule would apply thereto as to discharging water into a natural watercourse.

■ It appears from the record that the tubing was installed by the County Court acting as a county court. The transcript sets out one county court record referring to this road as having been closed. However, based upon the transcript, the road was never legally closed. It was referred to by all parties during the trial as a public road, and the county did work on it at various times, for example, installing this tube and later filling dirt around the tube. A county court has broad discretion in such matters. We cannot say the trial court erred in refusing to hold that the installation of this tube across the road and allowing water to enter an established drainage district watercourse was an unlawful expenditure of public money for private purposes.

■ Plaintiff's fourth assignment in addition to a general charge that he is deprived of his property without due process asks reversal for rulings on two evidentiary points. First, he says his offer to prove that the County Highway Engineer object-

ed to the installation of the tubing was denied. The engineer was a witness. He denied having made such objection and the record does not reveal just how plaintiff proposed to prove otherwise. Moreover, whether the engineer objected or not, is of little materiality. Second, plaintiff says his offer to prove that in ordering the tube installation the "County Court departed from its normal procedure". He does not point out the exact nature of its departure or show its materiality. This fourth assignment is ruled against plaintiff.

■■ Plaintiff's second and third points are that defendants Stoddard and the Levetts are unlawfully collecting water and forcing it upon plaintiff's lands and are obstructing the side and cross drainage of a public road. On these issues the trial court found that plaintiff had not sustained the burden of so proving and dismissed the petition. As heretofore pointed out, there was testimony supporting plaintiff's conclusions on these issues. There was also testimony to the contrary. In an equity case an appellate court must accord deference to the findings of the trial chancellor because those findings are based not only on the evidence, but in addition thereto, he saw and heard the witnesses and observed their demeanor when before him. The following was quoted with approval in McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, loc. cit. 703: " 'This rule of deference to the findings of the chancellor is one of necessity and convenience, and, while always limited to the conditions of the testimony in each particular case, is not to be ignored, unless the proof adduced is palpably insufficient to sustain the findings, or there is a strong preponderance of the evidence to show the court should have found to the contrary' ", and cases cited. See, also, Polich v. Hermann, Mo.App., 219 S.W.2d 849, loc. cit. 851. Under this conflicting evidence on this disputed point we shall not overturn the findings of the trial court, especially when the losing party was also carrying the burden of establishing his case by a preponderance of the testimony.

Finding no reversible error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.